# 13-0192-cv

## United States Court of Appeals

### *for the*

## Second Circuit

———————————

BLUE WHALE CORPORATION,

*Plaintiff-Appellant,*

–v–

GRAND CHINA SHIPPING DEVELOPMENT CO., LTD. a/k/a SHANGHAI
GRAND CHINA SHIPPING DEVELOPMENT CO., LTD.,
GRAND CHINA LOGISTICS HOLDING (GROUP) COMPANY LIMITED,
HNA GROUP CO. LTD.,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

===============================================

**BRIEF FOR *AMICUS CURIAE*, WHITE ROSEBAY SHIPPING S.A.**

===============================================

MICHAEL J. FREVOLA, ESQ.*
CHRISTOPHER R. NOLAN, ESQ.
WARREN E. GLUCK, ESQ.
HOLLAND & KNIGHT LLP
*Attorneys for Amicus Curiae*
*White Rosebay Shipping S.A.*
31 West 52nd Street
New York, New York 10019
(212) 513-3200                    *Lead Counsel

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.............................................................................ii

CORPORATE DISCLOSURE STATEMENT.....................................................1

INTEREST OF *AMICUS CURIAE* ..........................................................1

SUMMARY OF ARGUMENT.......................................................................5

ISSUE PRESENTED BY THE *AMICUS CURIAE*...................................................8

ARGUMENT ..................................................................................9

POINT I  THE COURT BELOW ERRED IN HOLDING THAT THE BLUE
          WHALE CONTRACT'S CHOICE OF LAW CLAUSE GOVERNED
          THE VEIL-PIERCING LAW INQUIRY .......................................9

POINT II  THE COURT BELOW ERRED IN NOT APPLYING  FEDERAL
           COMMON LAW TO ASSESS APPELLANT'S VEIL-PIERCING AND
           ALTER EGO CLAIMS .....................................................17

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Al Fatah Int'l Nav. Co. v. Shivsu Canadian Clear Waters Tech. (P) Ltd.,*
   649 F. Supp. 2d 295 (S.D.N.Y. 2009)................................................................ 16

*Am. Dredging Co. v. Miller,*
   510 U.S. 443 (1994) .......................................................................... 23

*Blair v. Infineon Tech. A.G.,*
   Civ. No. 09-295 (SLR), 2010 WL 2608959 (D. Del. June 29, 2010)............... 22

*Brave Bulk Transport Ltd v. Spot On Shipping Ltd,*
   2009 WL 741862, [2009] 2 Lloyd's Rep. 115 ................................... 14

*Brotherhood of Locomotive Engineers v. Spingfield Terminal Ry. Co.,*
   210 F.3d 18 (1st Cir. 2000) ...................................................... 21

*Chan v. Soc'y Expeditions, Inc.,*
   123 F.3d 1287 (9th Cir. 1997).................................................... 23

*Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC,*
   851 F. Supp. 2d 504 (S.D.N.Y. 2012)...................................... 20, 21

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.,*
   801 F. Supp. 2d 211 (S.D.N.Y. 2011)............................................ 21

*Dassault Falcon Jet Corp. v. Oberflex, Inc.,*
   909 F. Supp. 345 (M.D.N.C. 1995)..................................... 11, 13, 14

*Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,*
   782 F.2d 329 (2d Cir. 1986) .................................................... 23

*FR8 Singapore Pte Ltd. v. Albacore Maritime Inc.,*
   794 F.Supp.2d 449 (S.D.N.Y. 2011)............................................ 16

*Impulse Mktg Grp., Inc. v. Nat'l Small Bus. Alliance, Inc.,*
   No. 05-CV-7776(KMK), 2007 WL 1701813 (S.D.N.Y. June 12, 2007) ......... 10

*In re M/V Rickmers Genoa Litigation,*
   643 F. Supp. 2d 553 (S.D.N.Y. 2009)............................................. 23

ii

*Kalb, Voorhis & Co. v. Am. Fin. Corp.,*
   8 F.3d 130 (2d Cir. 1993) ...................................................................*passim*

*Las Vegas Sands Corp. v. ACE Gaming, LLC,*
   713 F. Supp. 2d 427 (D.N.J. 2010) ................................... 10

*Nat'l Marine Serv., Inc. v. C.J. Thibodeaux & Co.,*
   501 F.2d 940 (5th Cir. 1974) ........................................... 23

*Norfolk S. Ry. Co. v. Kirby,*
   543 U.S. 14 (2004) .......................................................... 23

*Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.,*
   160 F.3d 170 (4th Cir. 1998) ........................................... 23

*Panam Mgt. Group, Inc. v. Pena,*
   No. 08-CV-2258(JFB)(ARL), 2011 WL 3423338
   (E.D.N.Y. Aug. 4, 2011) .......................................... 10, 14

*Preston v. Frantz,*
   11 F.3d 357 (2d Cir. 1993) .............................................. 20

*ProShipLine, Inc. v. Aspen Infrastructures, Ltd.,*
   585 F.3d 105 (2d Cir. 2009) ............................................ 24

*Rondout Valley Centr. Sch. Dist. v. Coneco Corp.,*
   339 F. Supp. 2d 425 (N.D.N.Y. 2004) ......................... 10,11

*Schlumberger Logelco Inc. v. Morgan Equip. Co.,*
   No. C-94-1776 MHP, 1996 WL 251951 (N.D. Cal. May 3, 1996) .................. 11

*Sea Hunt Corp. v. O.S. Debraak Equip., Ltd.,*
   Civ. A. No. 87-4-CMW, 1992 WL 97370 (D. Del. Apr. 30, 1992) ................ 23

*Sonito Shipping Co. v. Sun United Maritime Ltd.,*
   478 F. Supp. 2d 532 (S.D.N.Y. 2007) ............................... 16

*Southern Pacific Co. v. Jensen,*
   244 U.S. 205 (1917) ........................................................ 22

*Status Int'l S.A. v. M & D Maritime Ltd.,*
   994 F. Supp. 182 (S.D.N.Y. 1998) .................................. 21

iii

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
 175 F.2d 513 (5th Cir. 1949), *rev'd*, 339 U.S. 684 (1950) .................................. 19

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
 339 U.S. 684 (1950) ......................................................................... 18, 19

*Time Warner Cable, Inc. v. Networks Grp., LLC*,
 No. 09 Civ. 10059(DLC), 2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010) .......... 10

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
 960 F.2d 1080 (1st Cir. 1992) ............................................................. 21

*United States v. Jon-T Chem., Inc.*,
 768 F.2d 686 (5th Cir. 1985) ............................................................. 22

*United Trade Assocs. Ltd. v. Dickens & Matson (USA) Ltd.*,
 848 F. Supp. 751 (E.D. Mich. 1994) ............................................... 11, 13

*Vitol S.A v Capri Marine Ltd.*,
 2010 WL 666342, [2010] EWHC 458 (Comm.) ................................ 15, 16

*Vitol, S.A. v. Primerose Shipping Co.*,
 2013 U.S. App. LEXIS 2731 (4th Cir. 2013) .................................... 14

*Wajilam Exp. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*,
 475 F. Supp. 2d 275 (S.D.N.Y. 2006) ................................................. 21

*Wehlage v. Empres Healthcare Inc.*,
 821 F. Supp. 2d 1122 (N.D.Cal. 2011) ............................................... 10

Order, *White Rosebay Shipping S.A. v. HNA Group Co.*,
 Civ. Act. No. 2:12-CV-00096 (S.D. Tex. Dec. 5, 2012) (unreported) ............... 2

*White Rosebay Shipping S.A. v. HNA Group Co.*,
 Civ. Act. No. 2:12-CV-00096, 2013 U.S. Dist. LEXIS 15249
 (S.D. Tex. Feb. 5, 2013) ..................................................................... 2, 3

*Williamson v. Recovery L.P.*,
 542 F.3d 43 (2d Cir. 2008) ........................................................ 9, 19, 20

iv

**STATUTES**

28 U.S.C. § ........................................................................................ 23

**OTHER AUTHORITIES AND MATERIALS**

Federal Rule of Appellate Procedure 26.1 ................................................ 1

Federal Rule of Appellate Procedure 29(c)(5) ......................................... 1

Rule 9(h) of the Federal Rules of Civil Procedure.................................. 21

Lloyd's Rep. 115 ............................................................................... 15, 16

Local Rule 29.1 ........................................................................................ 1

Article III, Section 2 of the United States Constitution ......................... 23

Brief on Behalf of Respondents, *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* No. 230, 1949 WL 50193 (U.S.)...................... 19

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for White Rosebay Shipping S.A. ("White Rosebay") hereby certifies that:

1.　　White Rosebay is not a publicly-traded entity, nor is its parent; and

2.　　No publicly-traded entity owns 10% or more of White Rosebay's shares.

## INTEREST OF *AMICUS CURIAE*[1]

For the reasons set forth below, White Rosebay wishes to appear in this case as an *amicus curiae* in support of Appellant Blue Whale Corporation's position. White Rosebay takes the position that this case involves important questions concerning the uniformity and consistency of federal common law and the general maritime law of the United States, and respectfully submits that the position it offers provides a viewpoint not represented either by Appellant or Appellees.

White Rosebay has separately commenced two admiralty veil-piercing actions against certain of the Appellees in this case (as well as other companies in

---

[1]　Pursuant to Federal Rule of Appellate Procedure 29(c)(5) and Local Rule 29.1, White Rosebay hereby makes the following disclosure statement: "No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person – other than the *amicus curiae*, its members, or its counsel – contributed money that was intended to fund preparing or submitting the brief."

the same group).  These actions are *White Rosebay Shipping S.A. v. HNA Group Co. Ltd., et al.,* 12-cv-0096 (S.D.Tex.) (the "White Rosebay Attachment Action"), and *White Rosebay Shipping S.A. v. HNA Group Co. Ltd., et al.,* Index No. 652958-2012 (N.Y. Sup. Ct.) (the "White Rosebay Enforcement Action") (collectively, the "White Rosebay Veil-Piercing Actions").

Like the matter at bar, the White Rosebay Veil-Piercing Actions are collateral to a breach of maritime contract dispute, which contract contains a choice of law clause specifying English law (the "White Rosebay Contract"). White Rosebay's contractual counterparty was a British Virgin Islands entity called Hong Kong Chain Glory Shipping Co. Ltd. ("Chain Glory").  Chain Glory is a subsidiary of Appellee HNA Group Co. Ltd. ("HNA").  In the White Rosebay Veil-Piercing Actions, White Rosebay has alleged, *inter alia*, that HNA is the "alter ego" of Chain Glory and that federal common law governs the veil-piercing analysis.

On February 5, 2013, in the White Rosebay Attachment Action, the Honorable Nelva Gonzales Ramos, United States District Judge, United States District Court for the Southern District of Texas, issued her decision upholding White Rosebay's maritime attachment of the *M/V Osprey*, a vessel owned by another entity in the HNA Group that is not a party in this action.  *See White Rosebay Shipping S.A. v. HNA Group Co.,* Civ. Act. No. 2:12-CV-00096, 2013

2

U.S. Dist. LEXIS 15249 (S.D. Tex. Feb. 5, 2013).   White Rosebay's maritime attachment was effected pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and was based on veil-piercing and/or alter ego allegations against the HNA Group member.   *See id.*   District Judge Gonzales Ramos' decision applied federal common law for purposes of the veil-piercing analysis and ruled that White Rosebay had stated a *prima facie* admiralty veil-piercing claim.   *See id.*   In so ruling, she did not follow the assigned magistrate's Memorandum and Recommendation.   *See* Doc. # 62, *White Rosebay Shipping S.A. v. HNA Group Co.*, Civ. Act. No. 2:12-CV-00096 (S.D. Tex. Dec. 5, 2012).

Appellant Blue Whale Corp. ("Blue Whale") similarly instituted this veil-piercing attachment action collateral to an underlying maritime contract containing a choice of law clause specifying English law (the "Blue Whale Contract").   Blue Whale's counter party was Grand China Shipping Development Co. Ltd. ("GC Development").[2]   Blue Whale similarly has alleged that HNA is the "alter ego" of GC Development and that federal common law governs the veil-piercing analysis.

On January 11, 2013, the Honorable Alison J. Nathan, United States District Judge, United States District Court for the Southern District of New York, issued

_____

[2]   GC Development is also a party in the White Rosebay Veil-Piercing Actions. GC Development guaranteed the performance of Chain Glory's obligations pursuant to the White Rosebay Contract.

an order (the "Order") vacating an order of attachment issued under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims against HNA on the ground that Blue Whale failed to state a *prima facie* veil-piercing claim under English law. A-267.[3] District Judge Nathan held that the Blue Whale Contract's choice of law clause governed Blue Whale's veil-piercing complaint and therefore English law, not federal common law, controlled her analysis.

The Defendants in the White Rosebay Veil-Piercing Actions already have sought to vacate White Rosebay's attachment by displacing federal common law as the law governing the admiralty veil-piercing analysis. A decision in this matter affirming District Judge Nathan's Order likely will be argued by the defendants in the White Rosebay Veil-Piercing Actions to be another ground for vacating the attachment and for refusing to find the non-primary defendants also liable for Chain Glory's debt. Because the issue of whether federal common law is displaced by the contractual choice of law clauses is common to both cases, the outcome of this appeal likely will impact the White Rosebay Attachment Action and the White Rosebay Enforcement Action, as well as any appeals thereof. Indeed, with respect to the White Rosebay Enforcement Action, counsel of record for Defendants-Appellees herein previously advised undersigned counsel that he will seek to remove the White Rosebay Enforcement Action from New York State Court to the

---

[3] White Rosebay refers to the Joint Appendix herein as "A-____".

4

United States District Court for the Southern District of New York. It is quite possible that a part of that removal action will be to seek having District Judge Nathan accept the White Rosebay Enforcement Action as a related matter to this proceeding.

## SUMMARY OF ARGUMENT

The question presented in this appeal should be whether a contractual choice of law clause governs a veil-piercing analysis in federal court. Whether a federal court judge is sitting in admiralty or not, when assessing alter ego claims the choice of law clause in an underlying contract is "irrelevant" according to this Court's holding in *Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993).

The court below erred when it did not consider *Kalb* and its progeny. This is unsurprising because Appellees did not properly frame the key issue before the court. In the Order, the court below summarizes the Appellees' argument as follows:

> HNA asserts that, because the voyage charter contract under which Blue Whale seeks to hold HNA and Development liable has a choice of law provision indicating that all disputes are to be governed by English law, English law should govern the Court's analysis of Blue Whale's alter ego claim against HNA. (Mot. 2, 9-11; Reply 2-5).

A-263.

Appellees argued in their briefs that there are two distinct lines of district court cases addressing the validity of Supplemental Rule B claims; one line of cases assesses the plaintiff's allegations under federal common law, while the other holds the substantive law governing the underlying claim is determinative. Finding the Appellees' line of district court cases "more persuasive" (A-265), the court below found "that the claim-validity analysis [for a Supplemental Rule B veil-piercing complaint] is governed by the law of the underlying contract." (A-267).  But none of the Supplemental Rule B district court cases relied upon by Appellees (and adopted by the court below) involved veil-piercing or alter-ego claims.  None of those cases, therefore, assessed whether veil-piercing or alter ego claims are governed by a choice of law clause.  Instead, those cases merely examined how a contractual choice of law clause affected direct claims between the contractual counterparties.  This distinction is critical.  White Rosebay respectfully submits this brief *amicus curiae* to draw to this Court's attention what White Rosebay believes is the appropriate authority upon which this Court should rely to decide the primary issue at bar.

It has been settled law in this Circuit for nearly twenty years that because an action to pierce the corporate veil is collateral to any underlying breach of contract, a choice of law provision has no bearing on what law to apply when piercing the corporate veil.  In *Kalb*, while the controversy initially arose from the alleged

6

breach of certain debenture notes, the relief sought before this Court was piercing of the defendant's corporate veil to reach its shareholders. *See Kalb*, 8 F.3d at 131. The note holders argued that the choice of law provision in the debenture notes should dictate the law applicable to their veil-piercing action. This Court rejected the argument, declaring the choice of law clause in the notes "irrelevant" because "[t]he issue is the limited liability of the shareholders of a corporation – not [the issuer's] obligations under the debentures." 8 F.3d at 132.

Since *Kalb,* at least nine other United States courts directly have addressed the issue and – either independently, or in reliance on *Kalb* – determined that veil-piercing actions are collateral to, and beyond the scope of, the choice of law provision in any underlying contract. Moreover, each court that has been presented with the issue has rejected the argument that the law specified in the underlying contract's choice of law clause governed the veil-piercing action.

Should this Court reverse the court below's Order in light of *Kalb* and its progeny, as *amicus* suggests, the question then becomes what law ***does*** apply when assessing the sufficiency of Blue Whale's veil-piercing allegations if the choice of law clause is "irrelevant"? While this Court may decide to remand the matter so that the court below can decide the issue, the *Amicus* agree with Appellants that it is well established that federal common law applies to admiralty veil-piercing

claims so long as admiralty jurisdiction was pled by the plaintiff and such jurisdiction is found to exist.

## ISSUE PRESENTED BY *AMICUS CURIAE*

Every previous federal court having considered whether a contract's choice of law clause governs veil-piercing collateral claims has ruled those claims to be beyond the scope of that clause.  The court below held that the Blue Whale Contract's choice of law clause required the court to assess Appellant's admiralty veil-piercing claims under English law.  Did the court below err in holding that the choice of law clause governed the analysis of Appellant's claims?

Over sixty years ago, the Supreme Court refused to look to foreign law to resolve admiralty alter ego allegations in a maritime attachment dispute.  Courts sitting in admiralty nationwide uniformly have followed that guiding principle ever since.  The court below, howeever, looked to English law to assess Appellant's admiralty veil-piercing claims.  Did the court below err in using foreign law rather than federal common law to analyze Appellant's claims?

*Amicus* respectfully submits that the answer to both questions presented is "yes," and that this Court should reverse the District Court's Order and remand with instructions for the District Court to analyze Appellant's claims using the established federal common law principles discussed below.

# ARGUMENT

## POINT I

### THE COURT BELOW ERRED IN HOLDING THAT THE BLUE WHALE CONTRACT'S CHOICE OF LAW CLAUSE GOVERNED THE VEIL-PIERCING LAW INQUIRY

A veil-piercing action is an equitable remedy designed to transfer liability from a primary defendant entity to that entity's shareholders, affiliates or subsidiaries under appropriate circumstances. *See Williamson v. Recovery L.P.*, 542 F.3d 43, 53 (2d Cir. 2008) (noting the misconception that veil-piercing renders an entity's and its shareholders, affiliates and subsidiaries "one and the same").

In any veil-piercing action, there is necessarily an underlying tort, contractual breach or statutory violation that gives rise to an underlying claim against the primary defendant. The substantive law applicable to the underlying tort, contractual breach or statutory violation is not relevant to the corporate veil-piercing choice of law analysis. In diversity veil-piercing cases, most states choice of law rules require application of the veil-piercing law of the defendant's place of incorporation. *See*, *e.g.*, *Kalb,* 8 F.3d at 132. In admiralty cases, as well other federal question cases, courts apply federal common law to determine whether the corporate veil should be pierced. *See generally Williamson, supra,* and Point II, *infra*.

While courts generally will uphold choice of law clauses with respect to litigation of the underlying contractual breach, such choice of law clauses ***do not***

9

dictate or impact the law applicable to piercing of the corporate veil. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993); *see also Wehlage v. Empres Healthcare Inc.,* 821 F. Supp. 2d 1122, 1127-1128 (N.D. Cal. 2011) (holding choice of law provision in an agreement does not apply to an alter ego analysis after detailed analysis of nationwide precedent on the issue); *Panam Mgt. Group, Inc. v. Pena,* No. 08-CV-2258(JFB)(ARL), 2011 WL 3423338, at * 3 (E.D.N.Y. Aug. 4, 2011) (citing *Kalb* and numerous other cases when reaching the same decision); *Time Warner Cable, Inc. v. Networks Grp., LLC*, No. 09 Civ. 10059(DLC), 2010 WL 3563111, at *4 (S.D.N.Y. Sept. 9, 2010) (when assessing a veil-piercing claim, "[t]he plaintiff's argument that the law of New York should govern because it was chosen by the parties to govern the Programming Agreement is rejected")(citing cases); *Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010) ("While it is true that New Jersey will usually honor contractual choice of law clauses, the clause at issue simply does not extend to alter ego liability.") (citing *Kalb*); *Impulse Mktg Grp., Inc. v. Nat'l Small Bus. Alliance, Inc.*, No. 05-CV-7776(KMK), 2007 WL 1701813, at *7 (S.D.N.Y. June 12, 2007) (rejecting contention that contractual choice of law provision should govern veil-piercing analysis because "[t]he Contract's choice of law provision applies only to construction and interpretation of the Contract, not to all collateral claims arising from the Contract."); *Rondout Valley Centr. Sch. Dist.*

*v. Coneco Corp.,* 339 F. Supp. 2d 425, 440 (N.D.N.Y. 2004) (rejecting the use of choice of law clause to analyze veil-piercing claims because "[t]he Agreement's choice of law clause should not govern the piercing the corporate veil analysis because that issue is distinct from the formation and interpretation of the Agreement itself."); *Schlumberger Logelco Inc. v. Morgan Equip. Co.*, No. C-94-1776 MHP, 1996 WL 251951, at *1-2 (N.D. Cal. May 3, 1996) (same); *Dassault Falcon Jet Corp. v. Oberflex, Inc.,* 909 F. Supp. 345, 348 (M.D.N.C. 1995) (citing *Kalb* when rejecting the application of choice of law clause to veil-piercing claim); *United Trade Assocs. Ltd. v. Dickens & Matson (USA) Ltd.*, 848 F. Supp. 751, 759 (E.D. Mich. 1994) (same).

With the exception of the decision of the court below, in every case *Amicus* has found in which the court considered the issue of whether a veil-piercing action falls within the scope of the underlying contract's choice of law clause, the court rejected the argument. And the reasoning behind those courts' rejection of the choice of law clause for use in the veil-piercing analysis is consistent throughout those decisions.

As noted above, the seminal case on the choice of law issue is *Kalb*, in which this Court was confronted with the argument that an underlying choice of law clause should be the default law applied to a veil-piercing analysis. There, a group of debenture note holders sought to pierce the corporate veil of the Texas-

11

based entity that issued the notes. As a non-maritime diversity case, the *Kalb* Court first found the forum state's choice of law principles governed which state law would apply to the veil-piercing considerations. 8 F.3d at 132. After explaining New York's "interests analysis," this Court assessed the note holders' argument that, *inter alia*, New York veil-piercing law should apply because the notes contained choice of law clauses. *Id.* In rejecting the note holders' argument, the *Kalb* Court observed:

> Appellant's arguments, however, are unavailing. Texas substantive law applies to this alter ego claim because Texas is the place of Circle K's incorporation. ***The choice of law provisions in the debentures are irrelevant. The issue is the limited liability of shareholders of a corporation—not Circle K's obligations under the debentures.***

*Id.* (emphasis added). In so holding, the *Kalb* Court properly focused its analysis on the purpose behind a suit to pierce a corporate veil. The underlying document to which the parties agreed has nothing to do with alter ego or veil-piercing claims, which seek extra-contractual equitable relief to right a wrong committed by a contracting party. This analysis was collateral to the question of whether the parties lived up to the obligations under the debentures in *Kalb*.

A year later, in *United Trade*, *supra*, the Eastern District of Michigan independently arrived at the same conclusion. In that case, a Ukranian purchaser sued an American seller for breach of a sales contract that contained an English choice of law clause. The Ukrainian purchaser also sought to pierce the corporate

12

veil and hold the American seller's shareholder liable on "alter ego" grounds. When determining which veil-piercing law to apply, the Court reasoned "[a]lthough the choice of law clause directs this Court to interpret the contractual dispute under English law, the issue of piercing the corporate veil is collateral to the contract, and thus this Court is not bound by the choice of law provision." 848 F.Supp. at 759.

In 1995, the Middle District of North Carolina similarly was confronted with the issue of applicable veil-piercing law in *Dassault Falcon Jet, supra*. The action concerned a breach of warranty action by a purchaser, a private jet company, against a airplane wood-varnish manufacturer. The purchaser sought to pierce the corporate veil so as to hold the manufacturer's affiliate liable for any resulting judgment. Relying on *Kalb* and *United Trade*, the *Dassault Falcon Jet* court found that the choice of law clause in the underlying purchase agreement did not govern the veil-piercing action. The district court focused on the contracting parties' expectations at the time of agreement which would not have been contemplating veil-piercing liability issues in the years to come:

> Defendant SIO requests the court to apply North Carolina law on the grounds that the purchase order contained a choice of law provision electing North Carolina law. However, a choice of law provision in a contract is not binding on what law to apply for piercing the corporate veil. The reason for this is that the issue of piercing the corporate veil is collateral to and not part of the parties' negotiations or expectations with respect to the contract. It involves imposing liability on third-

13

party shareholders as opposed to governing the parties' obligations under the contract.

909 F. Supp. at 348 (citing, *inter alia*, *Kalb*, 8 F.3d at 132); *see also Panam*, *supra*, 2011 WL 3423338, at *3 (relying on *Kalb* and collecting more recent New York federal court decisions reaching the same conclusion).

Interestingly, the holding in *Kalb* not only has been adopted by district courts  throughout the United States, but similar analysis has reached an identical conclusion in English courts as well.  Appellant referenced *Vitol, S.A. v. Primerose Shipping Co.*, 2013 U.S. App. LEXIS 2731, *39 – *55 (4th Cir. 2013) in its brief to note that "[i]n an action commenced to obtain security for a judgment from the English High Court of Justice, the Fourth Circuit Court of Appeals applied the Fourth Circuit [federal common law] factors in evaluating the Rule B plaintiff's alter ego claim." (Appellant's Brief, at 15).  In a decision available on Westlaw, the primary defendant in the *Vitol* case applied to the High Court of Justice in England for an anti-suit injunction to enjoin Vitol from continuing its alter ego Rule B lawsuit in the District of Maryland.  The English court ruled that the English choice of law and choice of venue clauses did not apply to Vitol's alter ego claims, as they did not relate to the primary contract.  *See Vitol S.A. v Capri Marine Ltd.*, 2010 WL 666342, [2010] EWHC 458 (Comm.) (citing *Brave Bulk Transport Ltd v. Spot On Shipping Ltd*, 2009 WL 741862, [2009] 2 Lloyd's Rep. 115, which held

14

that a United States maritime veil-piercing attachment action fell outside the scope of an English law, English jurisdiction clause in the principal parties' underlying forward freight agreement).[4]

_____

[4]    While White Rosebay agrees with Appellant that the English choice of law clause is irrelevant to this action, the independent analysis by the *Vitol* English court is entirely consistent with *Kalb*:

> 32   I do not consider that on its true construction the [English] Law and Litigation clause in the charterparty extends to the determination of Vitol's assertion in Maryland as against [alter egos] Spartacus and Primerose. The issue in Maryland is not the establishment of a relationship between Vitol and Spartacus/Primerose. **Vitol's assertions against Spartacus and Primerose are not in any event based upon the charterparty. They are based upon the judgment against Capri. No question therefore arises as to the construction of the charter or as to the relations between the parties thereto. Furthermore the claim in Maryland has not given rise to a dispute arising out of or in connection with the charter. Rather it has given rise to a dispute arising out of or in connection with Vitol's judgment against Capri.**

> 33  None of this is surprising. The rights and obligations which were once governed by the charter have merged into the judgment. Vitol and Capri would have known that any judgment which the one obtained against the other was unlikely to be capable of enforcement in England, in which neither of them had a corporate presence. **It is most unlikely that they intended that matters concerning the enforceability of any judgment obtained the one against the other should be governed by the laws of England or be subject to the exclusive jurisdiction of the English court. They would rather have expected that any question as to enforcement would be dealt with in the courts of the forum in which was found an asset against which enforcement was attempted and determined according to the**

15

The court below found persuasive district court cases looking to choice of law clauses where the claims at issue ***did not*** involve veil-piercing or alter ego theories of liability. *See Al Fatah Int'l Nav. Co. v. Shivsu Canadian Clear Waters Tech. (P) Ltd.,* 649 F. Supp. 2d 295 (S.D.N.Y. 2009) (examining underlying merits of breach of contract action governed by English law to determine whether maritime attachment ***against the contracting party*** should be vacated); *Sonito Shipping Co. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) (same); *FR8 Singapore Pte Ltd. v. Albacore Maritime Inc.*, 794 F. Supp. 2d 449 (S.D.N.Y. 2011) (applying contract's choice of law provision in determining whether to compel non-signatory and alleged alter-ego to arbitrate); *see also* Order, A-264-65. The three cases cited stand for the uncontroversial proposition that when examining contract claims under a contract containing a choice of law clause, those contractual claims must be analyzed through the prism of the governing choice of law clause. *Kalb* and its progeny instruct that there is no basis

---

> ***applicable local law. . . .***
>
> 34    *It follows that I regard Capri's reliance on the Law and Litigation clause as misplaced. I am comforted to find that this is precisely the conclusion to which Burton J came in Brave Bulk Transport Ltd v. Spot On Shipping Ltd [2009] 2 Lloyd's Rep. 115 . That was a case concerned with a clause conferring exclusive jurisdiction upon this court "with respect to any suit action or proceedings relating to this Agreement". . . .*

*Vitol S.A.*, 2010 WL 666342 (emphasis added).

16

in relying on a contractual choice of law clause to analyze ***extra-contractual*** alter ego or veil-piercing claims, as those claims are collateral to the contract. *Kalb*, and the uniform body of national law that it spawned, mandates the reversal of the lower court's determination that the Blue Whale Contract's choice of law clause governs the analysis of Appellant's veil-piercing claims.

### POINT II

### THE COURT BELOW ERRED IN NOT APPLYING FEDERAL COMMON LAW TO ASSESS APPELLANT'S VEIL-PIERCING AND ALTER EGO CLAIMS

Should this Court agree that the Blue Whale English choice of law clause is irrelevant for purposes of analyzing Appellant's veil-piercing and alter ego claims, the question then becomes what law ***does*** apply? This Court may remand the case so that the court below can make this determination.

Should this Court review the issue, Appellant argues, and *amicus* agrees, that the proper applicable law is federal common law. Unlike federal diversity cases, in which federal courts apply state law (and look to the law of the defendant's incorporation) to decide the parties' claims, federal common law veil-piercing and alter ego claims ***do not*** look to the law of the defendant's incorporation to analyze the veil-piercing and alter ego issues. Rather, a body of federal common law has developed, which federal courts look to when analyzing veil-piercing and alter ego claims under federal law. Over sixty years ago, the

17

Supreme Court decided *Swift & Co. Packers v. Compania Colombiana Del Caribe,*
*S.A.*, 339 U.S. 684 (1950), a case in which the plaintiff-appellant had effected a
maritime attachment of a vessel in the Panama Canal Zone for claims arising from
cargo damage.   The plaintiff then learned that the vessel's Colombian owner
purportedly had sold the vessel to another Colombian entity (allegedly owned by
similar shareholders) several days earlier.  *Id.* at 686-87.  The district court and the
Fifth Circuit both rejected the plaintiff's maritime attachment claim against the
alleged fraudulent transfer, holding that such a claim fell outside admiralty
jurisdiction.   *Id.* at 687-88.  The Supreme Court reversed, holding that collateral
equitable claims challenging the propriety of defendants' corporate activities fell
within the admiralty jurisdiction and could be asserted under U.S. admiralty law.
*Id.* at 689-90.

The appellee in *Swift* argued both in the courts below and in its brief to the
Supreme Court that the propriety of defendants' behavior should be decided ***under***
***the law of Colombia*** (i.e., the law of the two defendant companies).  *See* Brief on
Behalf of Respondent, *Swift & Co. Packers v. Compania Colombiana Del Caribe,*
*S.A.*, No. 230, 1949 WL 50193 (U.S.), at *32 (arguing that "[i]n view of the
common nationality of the shipper and carrier and the constant availability of Cia
Transmaritima to be proceeded against in the country of its residence, the Canal
Zone was the last place in which it should have been sued."); *see also Swift & Co.*

*Packers v. Compania Colombiana Del Caribe, S.A.*, 175 F.2d 513, 519-20 (5th Cir. 1949)("The affidavits and exhibits of respondents' counsel as to the lack of jurisdiction, and particularly ***as to the validity of the alleged fraudulent transfer under the law of Colombia***, are highly prejudicial and objectionable as self-serving, hearsay declarations, and should never have been considered by the district court.") (McCord, J., dissenting).  In other words, over sixty years ago, in a federal common law context, the U.S. Supreme Court was asked to use the law of the defendants' place of incorporation to resolve the corporate propriety of defendants' actions in the fraudulent transfer context.  The *Swift* Court implicitly rejected that contention and apparently found it so unconvincing that it did not even address the issue in its opinion.

Moving from 1950 to present day, in the most recent case involving maritime veil-piercing and alter ego claims before this Court, *Williamson, supra*, this Court affirmed the district court's application of federal common law when assessing maritime alter ego allegations in the context of a Rule B attachment even where underlying non-disclosure agreements, determined to be maritime contracts, contained an Ohio choice of law clause.  542 F.3d at 52.  Before doing so, when considering the issue of whether the agreements were "maritime contracts" for jurisdiction purposes, the defendants argued that they could not be assessed under maritime law because the choice of law provision called for the application of Ohio

law. *Id*. at 49.  The *Williamson* Court rejected the argument, noting, "[t]he fact that a choice-of-laws provision exists in a contract does not, by itself, remove the contract from the scope of maritime law." *Id*.

More recently, in *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504 (S.D.N.Y. 2012), the court determined federal common law applied to the defendant's motion for summary judgment when assessing the plaintiff's alter ego claims in the context of enforcing arbitration awards arising out of a charter party dispute.  The parties did not dispute the charter party was a maritime contract which conferred maritime jurisdiction.  Rather, the defendant argued Texas state law should apply because diversity jurisdiction existed as well. *Id*. at 508.

In considering the argument, the court first reviewed the plaintiff's allegations in the complaint and noted its invocation of admiralty jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. *Id*.  It then held that even if diversity jurisdiction had been invoked, admiralty jurisdiction would apply nonetheless. *Id*. (quoting *Preston v. Frantz*, 11 F.3d 357, 358-59 (2d Cir. 1993)).  Having established admiralty jurisdiction existed, federal common law was the dominant consideration in the choice of law veil-piercing analysis:

> As courts in this Circuit have consistently held for more than two decades, "[f]ederal courts sitting in admiralty must apply federal common law when examining corporate identity." [*In re Arbitration*

20

*Between ]Holborn [Oil Trading Ltd. and Interpetrol Bermuda Ltd.],*
774 F. Supp. [840,] at 844 [S.D.N.Y. 1991]) (citations omitted); *see
also Constellation Energy Commodities Group Inc. v. Transfield ER
Cape Ltd.,* 801 F.Supp.2d 211, 223 (S.D.N.Y. 2011); *Wajilam Exp.
(Singapore) Pte. Ltd. v. ATL Shipping Ltd.,* 475 F.Supp.2d 275, 282
(S.D.N.Y. 2006); *Status Int'l S.A. v. M & D Maritime Ltd.,* 994 F.
Supp. 182, 186 (S.D.N.Y. 1998). Put simply, ***Fulcrum's arguments
that federal courts sitting in admiralty are not obligated to apply
federal common law and that a Rule 9(h) designation "has no
impact on the substantive decisional law to be applied" (Def. Mem.
at 11–12), flies in the face of well-established precedent in this
district.***

851 F. Supp. 2d at 508 (emphasis added).

Here, *amicus* note Appellant's invocation of admiralty jurisdiction in its

complaint and reliance on *Clipper* when arguing that federal common law should

have been deemed to apply. Appellant's Brief, at 17-18 & n.6.

The *Clipper* decision's application of federal common law in determining

whether to pierce the corporate veil when sitting in admiralty, based on

"overwhelming authority," is not limited to the admiralty context. *Amicus* has

surveyed other federal question cases involving veil-piercing claims and federal

common law similarly was applied. *See, e.g., Brotherhood of Locomotive

Engineers v. Spingfield Terminal Railway Co.,* 210 F.3d 18 (1st Cir. 2000) (action

under Railway Labor Act); *United Elec., Radio & Mach. Workers of Am. v. 163

Pleasant St. Corp.,* 960 F.2d 1080, 1092 (1st Cir. 1992) ("We think that in disputes

involving workers' claims to ERISA benefits, whether derived through collective

bargaining under the LMRA or from individual employment contracts, a federal court should apply a federal common law standard of corporate seperateness.") (citations omitted); *United States v. Jon-T Chem., Inc.*, 768 F.2d 686, 692 (5th Cir. 1985) (applying federal common law on issue of veil-piercing in matter involving fraudulent misrepresentations to obtain agricultural subsidies under U.S. Government cotton program); *Blair v. Infineon Tech. A.G.*, Civ. No. 09-295 (SLR), 2010 WL 2608959 (D.Del. June 29, 2010) (ERISA action in Delaware state court); *see also NLRB* v. *County Van & Storage Inc.,* No. 97 Civ. 2099(JSM), 1997 WL 282212, at *3-*4 (S.D.N.Y. May 28, 1997) (applying federal common law-based alter ego analysis regarding alleged unfair labor practices).

Article III, Section 2 of the United States Constitution and 28 U.S.C. §1333 grant federal courts original jurisdiction over federal admiralty actions. This jurisdiction enables the achievement of national uniformity in the application of United States maritime law. *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 216 (1917). This uniformity has been continually upheld by the Supreme Court in a variety of situations. With respect to the application of federal common law to maritime veil-piercing and alter ego claims, maritime courts nationwide which have opined on the issue (including the Second, Fourth, Fifth and Ninth Circuits

22

and district courts of the Third Circuit) apply the same rule.[5]  It should not matter whether the veil-piercing and alter ego claims are being asserted in New York, Miami, San Francisco or Houston – the substantive law applied by each district court should be identical.   Adopting the court below's analysis would disturb current national uniformity in this area of maritime law.  Indeed, as recently stated by one local district court:

> Federal maritime common law is appropriately applied to corporate control liability theories in maritime actions ***in order to promote uniformity throughout the maritime law***….

> [Defendants'] proposed rule that state laws should be applied to corporate control theories in maritime actions ***runs counter to the overriding presumption that federal maritime law (statutory or common) displaces otherwise applicable state law***.

*In re M/V Rickmers Genoa Litigation*, 643 F. Supp. 2d 553, 557 (S.D.N.Y. 2009) (citing, *inter alia*, *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28-29 (2004); *Am. Dredging Co. v. Miller*, 510 U.S. 443, 451 (1994)) (emphasis added).

---

[5] *See, e.g.*, *Nat'l Marine Serv., Inc. v. C.J. Thibodeaux & Co.*, 501 F.2d 940 (5th Cir. 1974); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir. 1986); *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997); *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170 (4th Cir. 1998); *Sea Hunt Corp. v. O.S. Debraak Equip., Ltd.*, Civ. A. No. 87-4-CMW, 1992 WL 97370 (D. Del. Apr. 30, 1992).

Hence, *amicus* respectfully submits it is entirely appropriate for Blue Whale's admiralty veil-piercing and alter ego allegations to be assessed pursuant to federal common law principles.[6]

---

[6] In light of *Kalb* and the necessary consideration by the court below of Blue Whale's allegations under federal common law, should this Court remand this matter to the District Court the Appellant's points concerning limited discovery and the request to amend the complaint likely will be be moot. The one issue that remains is the District Court's "alternative" ground for dismissal concerning the Appellees' post-maritime attachment registration in this District. A-268. Appellant's Brief has addressed the language in the Rule B statute itself, the reference to the Supplemental Rule B Advisory Committee Notes (2005 Amendments) and *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 112 n.4 (2d Cir. 2009), all of which conclusively confirm that Appellees could not defeat a Rule B attachment by registering an appearance after the Rule B attachment application is filed. The court below, which failed to address this unimpeachable authority when ruling, likewise erred when suggesting that Appellees' after the fact registration provided an alternative ground for vacatur of Appellant's Rule B attachment.

## CONCLUSION

For the forgoing reasons, the court below's Order should be reversed and remanded with instructions to apply federal common law to the assessment of the Appellant's veil-piercing and alter ego allegations.

Dated:      February 28, 2013
              New York, New York

                         Respectfully submitted,
                         HOLLAND & KNIGHT LLP

                         By: *//s// Michael J. Frevola*
                         Michael J. Frevola
                         Christopher R. Nolan
                         Warren E. Gluck
                         31 West 52nd Street
                         New York, NY 10019
                         Tel: (212) 513-3200
                         Fax: (212) 385-9010
                         Email:      michael.frevola@hklaw.com
                                        chris.nolan@hklaw.com
                                        warren.gluck@hklaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that to the best of my knowledge and belief, the foregoing complies with the type-volume limitation under Fed. R. App. P. 32(a)(7)(B). Based on Microsoft Word's® word count system, the number of words in this Brief is 5,759. I also hereby certify that to the best of my knowledge and belief, the foregoing complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and (6). This brief has been prepared using a proportionately spaced plain Roman 14-point font, Times New Roman.

<u>/s/ Michael J. Frevola</u>

Michael J. Frevola